UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CONCEPTS AMERICA, INC., ) | |
| ) | |
| Debtor. ) | |
| GALLERIA MALL INVESTORS, LP, ) | |
| ) | |
| Appellant/Cross-Appellee, ) | No. 1:20-CV-06599 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| BRIAN AUDETTE, NOT INDIVIDUALLY, ) | |
| BUT SOLELY IN HIS CAPACITY AS ) | |
| CHAPTER 7 TRUSTEE FOR THE ) | |
| BANKRUPTCY ESTATE OF CONCEPTS ) | |
| AMERICA, INC., ) | |
| ) | |
| Appellee/Cross-Appellant. ) | |

**MEMORANDUM OPINION AND ORDER**

In September 2014, Galleria Mall Investors, LP, along with two other creditors, filed an involuntary Chapter 7 petition against debtor Concepts America, Inc.[1] Brian Audette, as the Chapter 7 trustee for Concepts' bankruptcy estate, objected to Galleria's proof of claim and asked the Bankruptcy Court to reduce the amount owed. The Bankruptcy Court sustained the objection. R. 1-4, Bankr. Ct. Op. Galleria and Audette both appeal the decision. R. 1, Appeal; R. 3, Cross-Appeal.[2] For the reasons explained in this Opinion, the Court affirms the decision of the Bankruptcy Court.

---

[1] The Court has subject matter jurisdiction over this case under 28 U.S.C. § 158(a)(1).

[2] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## I. Background

In May 2011, Galleria Mall Investors leased a restaurant space to tenant Townhouse DG (which did business as Townhouse Kitchen & Bar). R. 34, Exh. J, Joint Stipulation of Facts (Joint Stip.) ¶ 1. Concepts America guaranteed Townhouse's obligations under the lease. *Id.* ¶ 5. All did not go well: almost three years later, in February 2014, an Illinois state court filed, for enforcement in Illinois, a judgment that had been previously entered by a Texas state court. Joint Stip. ¶¶ 7, 9. The Texas judgment was entered in favor of Galleria and against Townhouse and Concepts for breach of the lease and the guaranty (respectively) and required Townhouse and Concepts to pay to Galleria $925,341.87 (plus pre-judgment and post-judgment interest, along with attorneys' fees of $27,616.75). *Id.* ¶ 7.

Also in February 2014, Galleria sought and received a citation to discover assets against Concepts in Illinois state court. Joint Stip. ¶ 11. Galleria served multiple discovery requests on Concepts to pursue the citation. *Id.* ¶ 13. Eventually, in August 2014, and still in Illinois state court, Galleria filed a motion against Townhouse and Concepts for a rule to show cause for failure to comply with court orders. *Id.* ¶ 18.

The next month, on September 19, 2014, Galleria and two other creditors filed an involuntary Chapter 7 petition against Concepts. Joint Stip. ¶¶ 21, 23. The Petition listed Galleria's claim as $925,341.76. *Id.* ¶ 24. In November 2014, Concepts consented to an order for relief under Chapter 7 of the Bankruptcy Code. *Id.* ¶ 27.

In January 2015, Galleria appointed law firm, Querrey & Harrow, as its proxy in the Trustee Election under Section 702 of the Bankruptcy Code. Joint Stip. ¶ 29.

2

The proxy filing listed Galleria's claim as at least $925,341.87. *Id.* ¶ 31. In December 2015, Galleria filed Proof of Claim No. 6 in the amount of $1,050,309.60. *Id.* ¶ 34. Galleria asserts that the claim is entitled to a secured status because of the lien created by the 2014 citation issued in Illinois state court. *Id.* ¶ 37. The deadline for filing claims by creditors, including Galleria, was February 5, 2016. *Id.* ¶ 38.

In March 2020, the Trustee filed its objection to Galleria's claim. R. 34, Exh. C. In October 2020, Judge David D. Cleary sustained the Trustee's objection to Galleria's claim. Bankr. Ct. Op. at 24. The Order reclassified Claim No. 6 as a general unsecured claim and reduced the amount to $362,022.15. *Id.* The Bankruptcy Court's opinion held the following:

- The claim objection is procedurally proper.

- The citation proceedings did not expire before the involuntary petition was filed.

- Galleria waived its secured claim.

- 11 U.S.C. § 502(b)(6) limits Galleria's claim.

*Id.* at 5–23. Galleria appealed and the Trustee filed a cross-appeal.

## II. Legal Standard

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the bankruptcy court's legal findings *de novo* and its factual findings for clear error. *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). Under the clear-error standard, an appellate court will not reverse simply because it would have

3

decided the case differently; instead, a reviewing court must ask whether, considering all of the evidence, it "is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (cleaned up).[3]

Also, certain decisions of a bankruptcy court are reviewed "only for an abuse of discretion." *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). This is a difficult standard to meet: "a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).

### III. Analysis

#### A. Procedural Propriety of the Trustee's Objection

Galleria first argues that the Trustee's objection disputed the validity of Galleria's lien and thus Bankruptcy Rule 7001(2) required an adversary proceeding to resolve the dispute. R. 33, Appellant's Br. at 11–13; R. 37, Appellant's Reply at 13–15. The Trustee responds that the objection was procedurally proper because the objection made no demand to determine the validity of the lien, so Rule 7001(2) was not triggered. R. 36, Appellee's Resp. at 15–18.

Under Bankruptcy Rule 3001(f), a proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Parties who

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

file an objection to a proof of claim are limited in what kind of relief they may seek via a mere objection: the objection "shall not include a demand for relief of a kind specified in Rule 7001 …." Fed. R. Bankr. P. 3007(b). Instead, if an objection demands a form of relief covered by Bankruptcy Rule 7001—the rule that defines what kinds of proceedings are "adversary" proceedings—then that objection must be resolved in an adversary proceeding.

As specifically relevant in this case, Bankruptcy Rule 7001(2) defines adversary proceedings as including "a proceeding to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). Given that Rule 7001(2) governs disputes over interests in property, an adversary proceeding is *not* required when a trustee is merely seeking a "disallowance of a secured claim," rather than seeking "to recover property." *In re McCowan*, 2018 WL 4056991, at *2 (Bankr. E.D.N.C. Aug. 24, 2018). "The trustee is not seeking to recover property; he is merely seeking disallowance of a secured claim." *Id.* The Bankruptcy Court in *Stoecker* applied the same reasoning. *In re Stoecker*, 143 B.R. 118, 128 (Bankr. N.D. Ill.), *aff'd in part, rev'd in part on other grounds*, 143 B.R. 879 (N.D. Ill. 1992), *aff'd in part, vacated in part on other grounds*, 5 F.3d 1022 (7th Cir. 1993). There, the Bankruptcy Court reasoned that a Trustee's objection to a proof of claim is *not* an affirmative attempt to recover property but instead puts the creditor to its burden of proving the allegedly secured status. 143 B.R. at 128. Likewise, here the Bankruptcy Court correctly held that the Trustee "does not seek to avoid the Galleria's lien or obtain other affirmative relief." Bankr. Ct. Op. at 8. The Trustee here did not, for example, contest the specific

5

amount of the claim or include a counterclaim. *See, e.g.*, *In re Gilchrist*, 2011 WL 66047, *2 (Bankr. E.D.N.C. Jan. 10, 2011); *In re Merry-Go-Round Enters., Inc.*, 227 B.R. 775, 778 (Bankr. D. Md. 1998). Rather, the Trustee asked the Bankruptcy Court to sustain the objection based on the contention that the citation proceedings had already ended before the bankruptcy petition was filed or that Galleria had waived its secured status. Bankr. Ct. Op. at 8.

In Galleria's view, the Trustee attacked the validity of the citation lien by arguing that it expired before the bankruptcy petition's filing. Appellant's Br. at 12–13. Galleria primarily cites two cases in support of that contention, but neither case so holds, and neither case involved a dispute over the expiration date of a citation lien.[4] The bankruptcy court in *Doctors Hospital of Hyde Park* convened an adversary proceeding to resolve the dispute over whether a creditor could rely on a liquidated-damages clause. *In re Drs. Hosp. of Hyde Park, Inc.*, 508 B.R. 697, 700, 703 (Bankr. N.D. Ill. 2014). But the opinion says nothing about whether any party resisted the convening of the adversary proceeding, so the court there did not generate a holding on the issue. *See id.* Indeed, there was no doubt that the liquidated-damages clause existed and was *in effect*—instead, the dispute was whether the sought-after liquidated

---

[4]Galleria cited a third case, *In re Kids Creek Partners, L.P.*, 210 B.R. 547, 548 (Bankr. N.D. Ill. 1997), but the parties there agreed that the particular dispute was subject to an adversary proceeding (though they then agreed to waive the proceeding), so the Bankruptcy Court did not decide the issue one way or the other, *id.* at 548 ("both parties involved here through their respective counsel expressly waived the need to file an adversary proceeding to determine the validity or extent of Leighton's lien and agreed to deal with all issues as a contested matter").

6

damages were unenforceable as an impermissible penalty or otherwise legally defective. *Id.* at 703–05. Here, the Trustee objects to the supposedly secured status of Galleria's claim by arguing that the lien did not even exist anymore when the bankruptcy petition was filed.

The other case cited by Galleria, *Ginther*, did address the adversary-proceeding-or-not issue head on, but the case is distinguishable. *In re Ginther*, 427 B.R. 450, 456 (Bankr. N.D. Ill. 2010). In *Ginther*, the debtors expressly asked to void junior mortgages on the debtors' home, which indeed is a dispute over the validity of a lien. *Id.* Again, there was no dispute that the mortgages existed and applied to the property—the dispute instead was whether the senior mortgage exceeded the value of the home, so that the junior mortgages should be treated as unsecured claims. *Id.* at 451. Here, the Trustee's objection is *not* to the "validity," the "priority," or the "extent" of an indisputably applicable lien—instead the objection contends that Galleria had no lien at all when the bankruptcy petition was filed. Because the Trustee is not seeking a form of relief under Bankruptcy Rule 7001(2), the Bankruptcy Court was right to conclude that no adversary proceeding was needed.

### B. Expiration & Estoppel

With that procedural debate decided, the parties next contest whether the state court citation proceeding expired before the involuntary bankruptcy petition was filed. The Trustee argues that Galleria's citation lien terminated right before the bankruptcy petition was filed. Appellee's Resp. at 29–35.

7

Under Federal Rule of Civil Procedure 69(a), district courts must follow the "law of supplementary proceedings of the state in which they sit." *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 191 (7th Cir. 2008) (citing Fed. R. Civ. P. 69(a)). Under Illinois law, Section 2-1402 of the Code of Civil Procedure says that a supplementary proceeding begins upon the issuance (by a court clerk) and service of a citation, which entitles judgment creditors "to prosecute citations to discover assets for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor." 735 ILCS 5/2-1402(a). Service (not merely issuance) of the citation is crucial because "[t]he lien is considered perfected as of the date of service of the citation." *Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997) (citing 735 ILCS 5/2-1402(m)). Generally speaking, under Illinois Supreme Court Rule 277(f), a citation proceeding under Section 2-1402 "terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner." Ill. Sup. Ct. R. 277(f). The court may grant extensions beyond the six months, "as justice may require." *Id.* The provisions of Section 2-1402 are construed expansively and give the court broad authority to compel application of discovered assets or income. *City of Chicago v. Air Auto Leasing Co.*, 697 N.E. 2d 788, 791 (Ill. App. Ct. 1998).

Here, it is undisputed that Concepts first appeared pursuant to the citation in state court on March 19, 2014. The Trustee argues that Illinois Supreme Court Rule 277(f)'s six-month effective period ended *as of* the end of the six months, so on

8

September 19, 2014, the citation was no longer operative. Appellee's Br. at 30. In response, Galleria argues that the six-month period lasted *through* the last day of the period, so the citation was still effective on September 19. Appellant's Br. at 15.

The Bankruptcy Court did not need to resolve the precise September 18 versus September 19 debate, because the court instead concluded that the Trustee—standing in Concepts' shoes—is estopped from relying on the six-month deadline. Bankr. Ct. Op. at 10–11 (citing *Resolution Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1228 (7th Cir. 1993)). In *Resolution Trust Corporation v. Ruggiero*, the Seventh Circuit applied the same governing Illinois citation-proceeding statute and rule, and held that "a debtor who by his own actions delays the citation proceeding should be estopped to plead the deadline." 994 F.2d at 1228 (applying Section 2-1402 and Illinois Supreme Court Rule 277). This is an unsurprising interpretation of the governing Illinois law: as noted earlier, Illinois Supreme Court Rule 277(f) broadly authorizes extensions of the citation period "as justice may require," Ill. Sup. Ct. R. 277(f). The Trustee argues that *Ruggiero* and cases of its ilk are distinguishable because "in each of those cases, the courts were faced with a challenge to the citation-issuing district court's jurisdiction to enter orders after the six-month deadline." Appellee's Br. at 33. The Trustee points out that estoppel was used to "bridge the gap" between the six-month deadline and a later order. *Id.* But there is no reason why that purported distinction makes a substantive difference.

Here, when considering the contempt motion filed against Concepts, the state court ordered that the company (and its affiliates that were targeted in the motion)

9

produce the overdue records by September 10, 2014. Joint Stip., Exh. J (Bates number 840) (state court order of August 20, 2014). Galleria had complained that Concepts had "failed to provide any documents whatsoever … [to] indicate whether Defendants currently own any assets … despite the fact that they are viable and operating business entities," Joint Stip., Exh. I at 6 (Bates number 733). Indeed, the documents that had been produced "were not produced as they are kept in the usual course of business," *id.* at 3 (Bates number 730). On the basis of the contempt motion, the state court entered that disclosure order on August 20, 2014—which was still within the six-month citation period. Joint Stip., Exh. J. Even more importantly, the disclosure order also *entered and continued* the contempt motion to September 22, 2014, *id.*, which would be after the original six-month period, whether conceived of as September 18 or September 19. It would be odd indeed if the state court's continuance of the motion to after the original six-month period did not qualify as an extension of the citation period. So the citation lien did remain effective as of the date of the bankruptcy's petition filing on September 19. The Bankruptcy Court's factual finding on this point—that the Trustee is estopped from relying on the six-month deadline—is not clearly erroneous (indeed, it is outright correct).

### C. Waiver

Although the Bankruptcy Court found (correctly) that the Trustee is estopped from asserting that the citation lien expired before the bankruptcy petition's filing, the Bankruptcy Court went on to hold that Galleria in turn waived its secured claim by (1) filing the involuntary petition against Concepts without mentioning Galleria's

10

security; (2) filing a proxy vote in the Trustee election, an election that is reserved for unsecured creditors only; and (3) filing a Rule 2004 motion for examination without mentioning the security. Bankr. Op. at 13–20. It is indeed generally true that, in a bankruptcy court proceeding, a creditor "is entitled to surrender or waive his security and prove his entire claim as an unsecured one." *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 379 (1988) (cleaned up).

Waiver "is the intentional relinquishment or abandonment of a known right." *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (cleaned up) (describing waiver in context of waiving an arbitration provision); *In re Midway Airlines, Inc.*, 383 F.3d 663, 670–71 (7th Cir. 2004) (describing waiver in the same way in the context of a creditor waiving its secured claim). It is true that waiver is not the same as forfeiture, but waiver need not be evidenced by an explicit statement—waiver "by implication" is possible. *In re Midway Airlines*, 383 F.3d at 671. Indeed, in the analogous context of waiving the contractual right to arbitrate via how a litigant engages in conduct *during* the litigation (as distinct from outside-court events), waivers "can be implied as well as express." *Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (applying clear-error review to whether a party impliedly waived its contractual right to invoke arbitration through its litigation conduct). In any event, Galleria offers no reason as to why treating its litigation conduct as a forfeiture would alter the outcome, given that applying forfeiture here would not call into question the fairness, integrity, or public reputation of the Bankruptcy Court proceedings. *See Ewing v. 1645 W. Farragut LLC*, 90 F.4th 876, 887 (7th Cir. 2024)

11

(describing final element of forfeiture inquiry in civil case). With these principles in mind, it is time to examine the Bankruptcy Court's finding of waiver here.

*Failure to Disclose Security in Petition.* Galleria first challenges the Bankruptcy Court's finding that Galleria waived its secured claim by filing the involuntary bankruptcy petition against Concepts without mentioning Galleria's secured status. Appellant's Br. at 20. The Bankruptcy Court primarily relied on *In re Central Illinois Oil & Refining Co.*, 133 F.2d 657, 658–59 (7th Cir. 1943). There, the creditor had sold oil-processing equipment to the debtor and then later filed an involuntary petition against the debtor to force the debtor into a bankruptcy proceeding. *Id.* at 657. But the creditor did not mention the lien on the petition, instead describing the debt without mentioning any security. *Id.* at 657–58. Like the Bankruptcy Court here, Bankr. Op. at 13, the Seventh Circuit did *not* hold that secured creditors are somehow disqualified from filing involuntary bankruptcy petitions against debtors. *see* 133 F.2d at 659. Instead, the Seventh Circuit concluded that waiver of security arises from "the filing of such a petition by a secured creditor who makes no mention of such security …." *Id.* Because bankruptcy law preconditions the filing of an involuntary petition on the value of unsecured claims exceeding secured claims by a certain dollar value, 11 U.S.C. § 303(b)(1), the Seventh Circuit reasoned that when an involuntary petition does not mention security, then "the only inference which can be drawn" is that the entire sum of the described claim is unsecured. 133 F.2d at 659 (citing prior version of bankruptcy law governing involuntary petitions). In those circumstances, it is proper to find that the creditor "waived such security as he had." *Id.*

Given the record evidence here, there is no clear error in inferring waiver from Galleria's omission of the secured claim from the petition. There of course is no absolute rule that an omission like this *always* qualifies as a waiver. But here, as the Bankruptcy Court explained, Galleria offered "no direct evidence" on why Galleria did not disclose the security. Bankr. Op. at 16. If Galleria just made a mistake or overlooked listing the security, then Galleria could have offered evidence on that point—but it did not. Instead, it was reasonable for the Bankruptcy Court to infer that Galleria was done "chasing Concepts through courts in two states" in the state court citation proceedings, and now Galleria was turning to the Bankruptcy Court to (hopefully) collect and to liquidate property with a trustee's help. *Id.* Especially when viewed with the other facts (discussed next) from which to infer waiver, the Bankruptcy Court did not clearly err in relying on the omission.

***Participation in Trustee Vote.*** Galleria next asserts that the Bankruptcy Court erred in relying on Galleria's participation in the election of the Trustee as evidence of waiver. Appellant's Br. at 25. But here too the circumstances support the inference drawn by the Bankruptcy Court. Under Section 702(a) of the Bankruptcy Code, a creditor may vote for a candidate for trustee "only" if the creditor (1) "holds an allowable, undisputed, fixed, liquidated, *unsecured* claim" of a kind entitled to distribution; (2) does not have a materially adverse interest to other creditors; and (3) is not an insider. 11 U.S.C. § 702(a)(1)–(3) (emphasis added). The rationale for these requirements is, as the Bankruptcy Court explained, the concern that secured creditors generally (and naturally) want to preserve their lien so that they can be paid

13

more than unsecured creditors. Bankr. Op. at 17–18. The conflict of interest with other creditors is the reason why secured creditors should be barred from installing their favored trustees to the potential detriment of unsecured creditors.

Despite the eligibility requirement in 702(a)(1), Galleria went ahead and stated in its voting proxy that Galleria held a claim in the amount of at least $925,341.87—but made no mention of the security. Joint Stip. ¶ 31; Bankr. Op. at 17. Given the statutory backdrop—that only unsecured creditors are allowed to participate in the trustee election, 11 U.S.C. § 702(a)(1)—the Bankruptcy Court reasonably found that "Galleria made a representation that it held an unsecured claim when it appointed a proxy to vote its claim in the trustee election." Bankr. Op. at 18. Against this, Galleria contends that there was no significant conflict of interest with unsecured creditors and that its vote did not tip the election because the trustee election was uncontested. Appellant's Br. at 27–29; *id.* at 29 n.14 But those contentions miss the point: the Bankruptcy Court was not gauging the *intensity* of Galleria's conflict with other creditors in this particular case. Instead, the Bankruptcy Court properly reasoned that given the basic eligibility requirement to vote in a trustee election, and given that Galleria did not mention its security (or mention that it would be limiting its vote to the unsecured portion of its claim), the very act of voting was evidence of waiver. And, once again, Galleria failed to offer any evidence on why it participated in the election without mentioning its secured claim. Absent an explanation with a basis in the record, the Bankruptcy Court correctly held that Galleria's participation in the vote was evidence of waiver.

14

***Rule 2004 Exam.*** Finally, Galleria complains that the Bankruptcy Court also relied, in finding waiver, on a statement made by Galleria in its motion for a Rule 2004 examination. Appellant's Br. at 29. But all that the Bankruptcy Court did on this issue was to point out that Galleria again—in yet another description of Galleria's claim—did not mention that the claim was secured. Bankr. Op. at 19–20. Yes, of course secured creditors may seek a Rule 2004 examination. Fed. R. Bankr. P. 2004(a). But there is no reason to think that the Bankruptcy Court did not grasp that. The Bankruptcy Court simply and reasonably relied on the fact that Galleria again made no mention of its security when describing its claim as "on or about October 29, 2013, Debtor became indebted to GALLERIA pursuant to a Judgment entered in the amount of $925,341.87." Bankr. Op. at 20. All in all, the Bankruptcy Court relied on three pieces of circumstantial evidence to find that Galleria impliedly waived its secure claim. The Bankruptcy Court committed no clear error in making that finding.

### IV. Conclusion

The Bankruptcy Court's decision is affirmed.

ENTERED:

                      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 15, 2024